## Case No. 6,452.

### The HIAWATHA.

[Blatchf. Pr. Cas. 632.] [1]

Circuit Court, S. D. New York. May 5, 1862.

PRIZE PROPERTY—SALE OF, PENDENTE LITE.

1. In this case, after an affirmance by this court of the decree of the district court condemning the vessel and cargo, and the taking of an appeal to the supreme court by the claimants, this court, on the application of the prize commissioners, and on proof that the cargo, consisting of tobacco, was in a perishing condition, ordered it to be sold.

2. The provisions of the act of March 25, 1862 (12 Stat. 374), in regard to the sale of prize property, pendente lite, commented on.

---

[1] [Reported by Samuel Blatchford, Esq.]

3. That act applies to proceedings in this court as well as in the district court.

4. The practice under that act prescribed and regulated.

In admiralty.

NELSON, Circuit Justice. The vessel and cargo were condemned in the district court as prize, upon proceedings instituted by the United States. [Case No. 6,451.] An appeal was taken to this court from that decree, which was affirmed. [Id. 6,450.] Since then an appeal has been taken to the supreme court from the latter decree, and is now pending.[2] The cargo consists chiefly of tobacco, manufactured and unmanufactured, which was laden on board the vessel at City Point, Virginia, in May, 1861. The capture occurred in the same month in Hampton Roads, and the vessel and cargo were brought into this port. The vessel, with most of the cargo, is lying at the Atlantic dock, in Brooklyn. According to the report of the prize commissioners, under date of April 14, 1862, supported by proof, the cargo is in a perishing condition. They, therefore, asked for an order of sale for the benefit of all concerned. A sale was ordered accordingly, and some steps were taken under the order, with a view to an appraisal of the cargo, preliminary to the sale. The proceedings were afterwards stayed, for the purpose of enabling the proctor and advocate for the claimants to make some suggestions to the court in respect to the order of sale; and those suggestions have been submitted for its consideration. It is not denied that the cargo is in a perishing condition, or that the interference of the court is required, with a view to its preservation pending the litigation. The value of the property involved is large, and the claimants are numerous, as the documentary proofs are said to show some thirty-three different bills of lading. No application has been made by any of the claimants for any interference with the cargo by the court, with a view to its preservation. The application is exclusively on the part of the government, and by the prize commissioners, acting for the benefit of all persons or parties concerned. I am satisfied, upon the proofs before me, that some immediate steps should be taken to preserve the subject-matter in dispute from loss, and that it will be for the interest of all parties that the cargo be sold.

The recent act of congress, passed March 25, 1862 (12 Stat. 374), provides (section 1) that it shall be the duty of the prize commissioners, "from time to time, pending the adjudication, to examine into the condition of said property, and report to the court if the same or any part thereof be perishing or perishable, or deteriorating in value; and if the same be so found by the court, upon said report or other evidence, the court may, thereupon, order an interlocutory sale thereof by the United States marshal, and the deposit of the gross proceeds of such sale in the registry of the court to abide the further order of the court, whether a claim to said property has or has not been interposed." I am inclined to think that this provision applies as well to proceedings in this court as in the court below. I do not suppose that it was intended to interfere with any of the usual modes employed in this court or in the court below for the disposition or preservation of the fund or subject-matter of litigation pending the suit; but I think that the object was to provide for the case of a sale, which is one of the modes, when that one had been adopted by the court.

This power of the prize commissioners is, I believe, new, and it may be proper to submit some observations upon it. The power is, I think, joint, and requires the concurrence of both in the exercise of it. As matter of practice, it would be proper for them to give to the district attorney, as representing the government, and also to the proctor for the claimants, notice of the application to the court for the sale, so as to afford an opportunity to these parties to support or oppose the order of sale. Either of them may still make an application to the court in respect to the condition of the res, notwithstanding this power of the commissioners. This power was obviously conferred upon the commissioners as an additional security for the preservation of the property, and for abundant caution. The sale is, when ordered, to be made by the marshal; but, as matter of practice, should be made under the superintendence and direction of the commissioners. They represent all parties in interest, and it is their duty to see that the property is not sacrificed at the sale. The relation they hold to the property is not unlike that of a private party in sales of this description. The marshal is to receive the purchase moneys, make a proper return of the sales, and pay the moneys into the registry of the court. The act provides that the order of sale shall contain an order to pay the gross proceeds into the registry; and the second section enacts "that all reasonable and proper claims and charges for pilotage, towage, wharfage, storage, insurance, and other expenses incident to the bringing in and safe custody and sale of the property captured as prize shall be a charge upon the same, and, having been audited and allowed by the court, shall, in the event of a decree of condemnation or of restitution on payment of costs, be paid out of the proceeds of any sales of the property, final or interlocutory, in the custody of the court." The gross proceeds of the sale must be paid into the registry of the court, and, on the allowance of the charges, &c., by the court, they may be paid. It may be proper to say

---

2 [See note at end of case.]

in advance, that where these charges are fixed by law they will be strictly regulated accordingly; and, where they are not fixed by law, the allowance will in no case exceed the usual accustomed charge in similar cases arising out of navigation and trade. I suppose that the charges for pilotage, towage, wharfage, storage, and all other incidental necessary expenses, are either fixed by law or by custom and usage, or have some definite limit or regulation by the course of trade and business. The marshal having the possession and custody of the vessel and cargo, subject to the direction and control of the court, he will be held responsible for its due care; for placing and securing the vessel at a proper dock; and, when the cargo is ordered to be discharged, for selecting a fit and suitable warehouse for its stowage and custody. Where an appraisal of the goods is ordered to be made by the commissioners before a sale, he will discharge the cargo under their superintendence, so as to enable them to take a list of it, with a view to the appraisal, and he will also be enabled to take a list for his own benefit, with a view to the sale. I think that, in discharging the cargo, the parcels of each bill of lading should be separated, and be appraised and sold separately, so that each claimant may be advised of his distinct interest involved in the litigation. I shall affirm the order of sale heretofore made; but the sale is to take place in the mode and manner more fully stated in this opinion. The stay of proceedings is discharged.

[The decree of the circuit court was affirmed by the supreme court on appeal. 2 Black (67 U. S.) 635. See note at end of Case No. 6,450.]